UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | )  2:18-CR-00148-DCLC-CRW |
| | ) |
| v. | ) |
| | ) |
| ISAAC MARBLE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Before the Court is Defendant's *pro se* Motion to Reduce Sentence pursuant to Guideline Amendment 821 [Doc. 687]. Federal Defender Services ("FDS") has filed a supplemental motion arguing Defendant is eligible for a sentence reduction [Doc. 690]. The United States responded, conceding Defendant is eligible for a reduction in sentence but deferring to the Court as to whether to reduce his sentence and by how much [Doc. 691, pg. 1]. FDS filed a reply [Doc. 693]. For the reasons stated below, Defendant's motion [Doc. 687] is **GRANTED IN PART**. Defendant's sentence shall be **REDUCED** to **96 months**.

I.  BACKGROUND

On August 8, 2019, Defendant pleaded guilty to one count of a conspiracy to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A) [Docs. 232, 239]. The Presentence Investigation Report ("PSR") determined Defendant's base offense level was 34 and applied a two-level adjustment for obstruction of justice, resulting in an adjusted offense level of 36 [Doc. 423, ¶¶ 29, 33–34]. Applying the three-level reduction for acceptance of responsibility, it found Defendant's total offense level was 33 [*Id.*, ¶¶ 36–38]. With zero criminal history points, Defendant's criminal history category was I, resulting in an advisory

1

sentencing guideline range of 135-168 months of imprisonment [*Id.*, ¶¶ 43, 70].[1] The Court sustained Defendant's objection to the two-level adjustment for obstruction of justice, reducing Defendant's guideline range two levels to offense level 31, with a guideline range of 108-135 months [Doc. 531, pg. 1].[2] The PSR also indicated that Defendant met the safety valve criteria found in 18 U.S.C. § 3553(f), [Doc. 423, ¶ 30 n. 1], so the Court varied downward by two additional levels [*See* Doc. 531, pg. 3]. The Court sentenced Defendant to 108 months [Doc. 530, pg. 2]. His projected release date is September 18, 2025. *See* Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/.

While in custody of the Bureau of Prisons ("BOP"), Defendant incurred two disciplinary infractions: one on January 13, 2021 for possessing a hazardous tool, and another on November 20, 2021 for fighting [Doc. 690-2]. However, he claims the "hazardous tool" was a cell phone found in a common area, and that he fought another inmate because the inmate had confronted Defendant, making him fear for his safety and leading him to believe he needed to defend himself [Doc. 693, pgs. 2–3]. Further, he has participated in nearly 300 hours of BOP programming, including obtaining his GED in October 2022 [Doc. 690-1].

Effective November 1, 2023, Guideline Amendment 821, Part B, subpart 1 added a two-

---

[1] At the time of sentencing, Defendant had pending two simple assault charges in Carter County, Tennessee and one aggravated assault pending in Washington County, Tennessee. [Doc. 423, ¶¶ 48, 49, 45]. He has since resolved those two misdemeanor charges with a guilty plea, and the aggravated assault charge has been dismissed.

[2] The PSR noted that law enforcement had intercepted communications between Jonathan Marble and Greg Fessel indicating that Jonathan Marble planned to deliver an SKS assault rifle to Fessel [Doc. 423, ¶ 24]. Officers conducted a traffic stop and seized an SKS assault rifle from an individual falsely identified as co-defendant Joshua Townsend [*Id.*, ¶ 24]. The United States Attorney's Office only later learned the individual purporting to be Townsend was in fact Defendant [*Id.*, ¶ 25]. Defendant objected to the obstruction of justice enhancement, arguing that his falsely identifying himself during the traffic stop did not impede the investigation or prosecution of his instant offense [Doc. 441, pgs. 1–2].

level reduction for defendants who received zero criminal history points under Chapter Four, Part A of the Guidelines. *See* U.S.S.G. § 4C1.1(a). This amendment applies retroactively. U.S.S.G. § 1B1.10(d). The present motion and supplement followed [Docs. 687, 690].

## II. LEGAL STANDARD

A district court has "no inherent authority … to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). "A district court may modify a defendant's sentence only as provided by statute." *United States v. Johnson*, 564 F.3d 419, 421 (6th Cir. 2009). However, 18 U.S.C. § 3582(c)(2) provides: "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The Supreme Court has explained that § 3582(c)(2) requires a "two-step inquiry." *Dillon v. United States*, 560 U.S. 817, 826 (2010). At step one, the Court must "determine that a reduction is consistent with [U.S.S.G.] § 1B1.10." *Id.* A reduction is inconsistent with § 1B1.10 if none of the amendments made retroactive in the policy statement apply to the defendant or would "have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2). In determining what reduction, if any, is appropriate, the Court "determine[s] the amended guideline range that would have been applicable to the defendant if the amendment(s) . . . had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). The Court must "leave all other guideline application decisions unaffected." *Id.* With limited exceptions, "the court shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the

3

amended guideline range . . . ." U.S.S.G. § 1B1.10(b)(2)(A). Nor may the "reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).

At step two, the Court considers the applicable § 3553(a) factors to determine whether the authorized reduction is appropriate "in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827. "[T]he decision whether and to what extent to grant an authorized sentence reduction is discretionary." *United States v. Monday*, 390 F. App'x 550, 554 (6th Cir. 2010) (citing *United States v. Johnson*, 564 F.3d 419, 421 (6th Cir. 2009)). But "proceedings under 18 U.S.C. § 3582(c)(2) and [U.S.S.G. § 1B1.10] do not constitute a full resentencing of the defendant." U.S.S.G. § 1B1.10(a)(3).

### III. ANALYSIS

Defendant argues [Doc. 690, pg. 4], and the Government concedes [Doc. 691, pg. 5], that Defendant is eligible for a two-level reduction for Zero-Point Offenders pursuant to U.S.S.G. § 4C1.1(a). Because Defendant's guideline range at sentencing was based on an offense level of 31 and a criminal history category of I, [*see* Doc. 531, pg. 1], applying the amendment would result in a Total Offense level of 29 and an amended guideline range of 87-108 months. Defendant seeks the maximum possible reduction consistent with § 1B1.10(b)(2) [Doc. 690, pgs. 4–5]. The Government "defers to the Court's discretion whether and to what extent to reduce Marble's sentence" [Doc. 691, pg. 6].

Defendant argues the District Court *should* have applied the two-level safety-valve reduction under U.S.S.G. §§ 2D1.1(b)(18) and 5C1.2 at the time of his initial sentencing hearing [Doc. 690, pgs. 6–7]. But a proceeding under § 3582(c)(2) is not a full resentencing hearing, and "correcting sentencing mistakes is 'outside the scope of the proceeding authorized by §

4

3582(c)(2).'" *United States v. Smith*, 427 F. App'x 511, 513 (6th Cir. 2011)(quoting *Dillon*, 560 831).

The Court turns to the § 3553(a) factors. At the time Defendant's commission of the instant offense concluded, he was 21 years old [*See* Doc. 423, pg. 3, ¶ 40]. He stated his father was never involved in his life, and he "lived with his mother and grandmother, until her death when the defendant was 11 or 13 years old" [Doc. 423, ¶ 54]. His childhood was "full of 'instability' and 'frequent[ ] homeless[ness]'" [Doc. 423, ¶ 54]. He has one child from a long-term relationship and continues to remain in the child's life [Doc. 423, ¶ 55].

Since his incarceration, he has devoted significant effort to his rehabilitation. He obtained his GED in 2022 [Doc. 690-1]. He has participated in nearly 300 hours of BOP programming [Doc. 690-1]. Defendant acknowledges he received two disciplinary infractions in 2021 [*See* Doc. 690-2; Doc. 690, pg. 5]. He states his infraction for possessing a dangerous tool was for a cell phone found in a common area for which he was disciplined [Doc. 693, pg. 2]. He claims he received an infraction for fighting after another inmate confronted him and he felt a need to defend himself [Doc. 693, pgs. 2–3]. These infractions are concerning because they are similar to his conduct that formed the basis of the two assault charges detailed in the PSR.[3] This demonstrates a real need to protect the public from further crimes he might commit and promote respect for the law.

---

[3] For one assault, the PSR indicates that deputies attempted to return Defendant to his cell but he refused [Doc. 423, ¶ 48]. "The Defendant began to approach the deputy in an aggressive manner. The Deputy discharged a chemical agent and the defendant lunged toward the deputy. The defendant struck the deputy in the face…." [*Id.*]. The second assault occurred when the defendant told a deputy to remove another inmate from the cell or Defendant would start assaulting him [*Id.*, ¶ 49]. The deputy allegedly told Defendant to calm down [*Id.*]. Defendant then stated "you got ten seconds to open this door and get him out of here or else I will hurt him." [*Id.*]. Defendant counted down from ten and when he counted to zero, he – true to his word – began to physically assault the other inmate [*Id.*].

To his credit, he has invested considerable amount of time attending educational programs offered at the BOP. Indeed, he has done so well (aside from his two infractions) that the Court finds a sentence reduction is warranted. Considering the seriousness of the offense, the need for just punishment and promote respect for the law, as well as deterring Defendant from engaging in any future criminal offenses, the Court will reduce Defendant's sentence to **96 months**. This sentence reduction will adequately address the seriousness of Defendant's offense and would still be substantial enough to provide just punishment and deter him and others from committing criminal offenses.

### III. CONCLUSION

For the reasons stated herein, Defendant's motion [Doc. 687] is **GRANTED IN PART.** Defendant's sentence shall be **REDUCED** to **96 months**. If this sentence is less than the amount of time Defendant has already served, the sentence shall instead be reduced to time served. *See* U.S.S.G. § 1B1.10(b)(2)(C).

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge